## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DR. CARRIE KEFALAS, JOHN LOTT,  :
JEREMY BEER, KAMILA DUBISZ,     :
for themselves and on behalf of all   :    Dkt. No.: 21-cv-10204
others similarly situated,       :
                                 :
    Plaintiffs,              :
v.                               :
                                 :
BRISTOL MYERS SQUIBB CO.         :
                                 :
    Defendant.               :    December 1, 2021

### <u>VERIFIED COMPLAINT</u>

*"I never thought your announcements could give you – a mere human being – power to trample the gods' unfailing, unwritten laws. These laws weren't made now/or yesterday. They live for all time."* – Sophocles, *Antigone*.

1.    This is an action for redress against a multi-national corporation that preaches diversity, but manipulates its employees' articulation of their religious beliefs to justify discriminating against them. It seeks emergency injunctive relief under Title VII for both the Plaintiffs and all others similarly situated.

### *Jurisdiction*

2.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 2201, and venue is proper under 28 U.S.C. § 1391. The claims arise under Title VII.

### *Parties*

3.    Plaintiff Dr. Carrie Kefalas is a physician employed by Bristol Myers Squibb Co. in New Jersey. She holds a medical degree and a Masters Degree in Public Health, and she is a United States military veteran. She currently works as Head of Clinical Trial Risk Management for Global Drug Development for Bristol Myers Squibb Co.

4.    Plaintiff John Lott is a biotechnologist employed by Bristol Myers Squibb Co. in New Jersey. He holds a Masters of Science in Biotechnology from The John

Hopkins University. He currently works as an Associate Director of Strategy and Submissions Lead, Patient Safety, and Epidemiology for Bristol Myers Squibb Co.

5.      Plaintiff Jeremy Beer is a data integrity professional employed by Bristol Myers Squibb Co. in New Jersey. He holds a bachelor's degree from Salisbury University and is pursuing a Masters of Business Administration with a concentration in corporate strategy from Rutgers University. He currently works as a Senior Manager for Data Integrity for Bristol Myers Squibb Co.

6.      Plaintiff Kamila Dubisz is a biologist employed by Bristol Myers Squibb Co. in New Jersey. She holds a Bachelor's Degree in Biology/Biological Sciences from Felician College. She currently works as an Account Manager for Bristol Myers Squibb Co. in its Apheresis Operations division.

7.      Defendant Bristol Myers Squibb Co. (hereinafter, "BMS") is a multinational corporation incorporated under the laws of Delaware. It maintains its corporate headquarters in New York City, New York.

### *Factual Allegations*

8.      On September 7, 2021, BMS' CEO and Chairman, Dr. Giovanni Caforio, revised BMS's global letter regarding the ongoing COVID-19 pandemic to announce that BMS would require all of its United States employees to be fully vaccinated against COVID-19 by November 1, 2021. *See* **Exhibit A.**

9.      Shortly thereafter, BMS began to roll out its new requirement and institute processes to encourage employee vaccination. BMS's rollout included the threat of  "for cause" termination if employees did not receive COVID-19 vaccinations. BMS made

provisions at this time to entertain individual employees' requests for accommodations from its vaccination policy.

### BMS's process for religious accommodations

10.    BMS required employees seeking a religious accommodation to initiate the process by completing a standard religious accommodation request form.

11.    The initiating form required employees to answer standard questions such as identifying what policy that they were seeking an exemption from, what their religious beliefs were, how they conflicted with the policy, the duration of the requested accommodation, and what accommodation that they desired. It also required them to state that they sincerely held their religious beliefs, that BMS might need to obtain information to further evaluate their request, and that the information that they were providing was true and accurate.

12.    After BMS employees submitted the initiating form, BMS responded with a second emailed questionnaire that varied from 10 to 30 questions depending on the employee. The nature of this questionnaire invariably was to test the sincerity of the employee's religious beliefs, and BMS regularly demanded answers to this questionnaire within 2 to 3 days.

13.    Once employees had completed these written responses, BMS issued them decision letters either granting their requests or denying them and giving employees until a certain date to get vaccinated or face termination.

### Dr. Carrie Kefalas

14.    Dr. Kefalas submitted her request for a religious accommodation to BMS on September 30, 2021.

15.     She asked for a permanent exemption from BMS's policy requiring COVID-19 vaccination of all employees, and she identified herself as "a follower of Jesus Christ," clearly indicating that she did not associate with a religious denomination. **Exhibit B, p. 1-2.**

16.     She stated that the COVID-19 vaccination would violate her religious beliefs because it "would permanently destroy my relationship with My Savior, prevent eternal salvation, and promise eternal damnation of my soul as it is described in the Bible because I would be accepting the Beast as my Savior." *Id*.

17.     She stated that she had been working from home remotely full time during the pandemic because BMS had invested in providing her with a home office and that the team that she oversaw was spread out over different states that she did not reside or work in.

18.     Dr. Kefalas asked BMS to accommodate her religious beliefs by allowing her to work remotely. She further stated that she would welcome any other ideas on how to accommodate her faith.

19.     BMS Senior Director of Global Employee & Workforce Relations, Sangita Land, responded by requiring her to answer a questionnaire that is more suited for a Spanish Inquisition proceeding than a Title VII inquiry. Among other things, the questionnaire asks her to identify every vaccine that she took in her life, whether her kids had received any vaccinations, and whether there are other reasons that she did not want to take the COVID-19 vaccine. **Exhibit C**.

20.     After stating objections to the invasive nature of the questions, Dr. Kefalas ultimately answered the questions to the best of her ability on October 18, 2021. **Exhibit C.**

21.     On November 17, 2021, BMS provided Dr. Kefalas a decision letter signed by Vincent Garufi, its Executive Director of Human Resources, denying her request for a religious accommodation. **Exhibit D.** That letter stated the reasons that BMS claimed existed for denying her exemption:

a.  Dr. Kefalas' religious beliefs were not sincerely held.

b.  Dr. Kefalas had made generalized comments on internal company communication channels and external forums that questioned the safety of COVID-19 vaccinations, but did not express religious objections to the COVID-19 vaccine.

c.  Dr. Kefalas' objections to receiving a COVID-19 vaccine were related to its health and safety, not her religious beliefs.

d.  Dr. Kefalas failed to demonstrate that she would wear a BMS-approved mask and test regularly for COVID-19.

e.  Dr. Kefalas' failure to affirmatively demonstrate that she would wear a mask and test regularly would impose an undue hardship on BMS.

f.  No accommodation – even working remotely – would be reasonable and any accommodation would impose unreasonable expense and/or operational hardship on BMS.

22.     The letter further noted that the decision was final and mandated that she receive a COVID-19 vaccination and provide proof by November 29, 2021 or face termination on December 6, 2021.

23.     The letter ignores that Dr. Kefalas has never worked on-site in her current role for BMS and that she has always been a remote employee within this role because of the COVID-19 pandemic. The letter also failed to consider that Dr. Kefalas is the first person to hold the role, which was newly created, so BMS has never required the person filling the role to work in its offices.

24.     Termination would pose an extraordinary hardship on Dr. Kefalas. Her current salary is approximately $300,000. She is the single mother of three minor children. She does not receive alimony or child support. Her total monthly expenses are approximately $12,000 per month.

25.     Even assuming Dr. Kefalas can reduce her expenses by half each month, she still will face foreclosure on her home, default on her student loans, and the loss of assets that she has worked her entire life to acquire if BMS terminates her on December 6, 2021. She will also face a significant struggle to support her children and provide for herself.

26.     The nature of the COVID-19 pandemic has made it nearly impossible for unvaccinated individuals – even those with Dr. Kefalas' education, experience, and skill – to obtain employment.

27.     Additionally, BMS's termination of Dr. Kefalas for cause will bar her from obtaining unemployment benefits, further depriving her of the ability to support her children and herself.

28.    Dr. Kefalas has filed a complaint with the United States Equal Opportunity Employment Commission and awaits a right to sue letter.

### *John Lott*

29.    John Lott submitted his request for a religious accommodation to BMS on September 24, 2021.

30.    He asked for an exemption from BMS's policy requiring COVID-19 vaccination of all employees for as long as relevant, and he attached a written letter clearly articulating his religious beliefs. **Exhibit E.** In his letter, Lott stated that he had been raised as a Catholic, but simply described himself as "a follower of Christ my whole life." *Id*. Using Bible verses, he articulated the following three reasons for why receiving a COVID-19 vaccination would violate his religious beliefs:

   a.  First, it would alter his DNA and that it would tamper with God's design of human beings.

   b.  Second, receiving a vaccine to reduce the severity of a sickness would demonstrate his lack of faith in God's word in violation of his religious beliefs.

   c.  Third, he objected to the use of fetal cell lines taken from aborted fetal cells in the design and development of the COVID-19 vaccinations.[1]

31.    Lott further stated in his letter that he would be more than happy to explore any other measures to help prevent the spread of coronavirus, "such as wearing a mask, receiving asymptomatic testing when indicated or continuing to work remotely." *Id*.

---

[1] https://www.michigan.gov/documents/coronavirus/COVID-19_Vaccines_and_Fetal_Cells_031921_720415_7.pdf

32.     Like Dr. Kefalas, Lott received an inquisitorial questionnaire from BMS Senior Director of Global Employee & Workforce Relations Sangita Land on October 6, 2021 asking him to answer certain questions, which asked, among other things, how he could work for BMS given that it used fetal cell lines for testing or development, what products he has not and will not purchase based on his religious beliefs, and whether he had any other reasons for refusing to taking a COVID-19 vaccine.

33.     Additionally, BMS required Lott to attest to whether he had used common products such as Tylenol and Pepto Bismol, which it represented had also been tested on fetal cell lines, and to promise never to use the products based on its representations. **Exhibit G.**

34.     Lott responded to the attestation that he did not use any of the listed products and that he only became aware of the aborted fetal cell line issue three years ago, which caused him to repent from unknowingly taking fetal cells into his body. Lott further stated that he would carefully do his own consideration as to each medicine listed. *Id*.

35.     On November 16, 2021, BMS provided Lott a decision letter signed by Caitland Freeland, its Executive Director of Human Resources, denying his request for a religious accommodation. **Exhibit H.** That letter intentionally ignored two of Lott's stated religious beliefs and focused entirely on his belief that a COVID-19 vaccination would alter his DNA and that would violate his faith.

36.     Unlike Dr. Kefalas, BMS did not say anything about the sincerity of Lott's beliefs. Instead, it simply concluded that he was not eligible for an accommodation based on his religious beliefs. *Id*.

37.    It further concluded that there was no accommodation available that would enable Lott to continue performing his duties without posing an undue hardship to BMS despite Lott having worked remotely from home throughout the entirety of the pandemic. In doing so, BMS ignored that Lott received at least a half dozen "bravo" awards while working from home and a raise due to his outstanding performance.

38.    Instead, BMS informed Lott that he had to receive a COVID-19 vaccination and provide proof by November 29, 2021 or face termination on December 6, 2021.

39.    Termination would pose an extraordinary hardship on Lott. His current salary is approximately $178,000. He uses that income to help support his mother and stepfather with their living costs, and he had hoped to start a family with his girlfriend in the very near future in reliance on his income. Lott also incurs approximately $9,000 in monthly debt between his student loans, mortgage, and other living expenses.

40.    Even assuming Lott can reduce his expenses by half each month, he still will face foreclosure on his home, default on his student loans, and the loss of assets that he has worked his entire life to acquire if BMS terminates him on December 6, 2021. He will face a significant struggle to support himself and his family if he is terminated.

41.    The nature of the COVID-19 pandemic has made it nearly impossible for unvaccinated individuals – even those with Lott' education, experience, and skill – to obtain employment.

42.    Additionally, BMS will terminate Lott's girlfriend as well for the same reasons on December 6, 2021 and BMS's termination of them for cause will bar them from obtaining unemployment benefits, further depriving them of the ability to start a family,

support Lott's mother and stepfather, and preserve what they have worked so hard to build.

43.    Lott has filed a complaint with the United States Equal Opportunity Employment Commission and awaits a right to sue letter.

### Jeremy Beer

44.    Jeremy Beer submitted his request for a religious accommodation to BMS on September 27, 2021.

45.    He asked for a permanent exemption from BMS's policy requiring COVID-19 vaccination of all employees, and he attached a written letter clearly articulating his religious beliefs with citations to applicable Bible passages. **Exhibit I.** In his letter, Beer did not associate himself with a religious denomination and described his spiritual journey from his family's heritage to his current beliefs. *Id*. Using Bible verses, he explained that his body "is the temple of God and subjecting it to a vaccination or any other impurity would criticize my lord and question his divine omnipotence." *Id*. He further explained that his religious beliefs require natural healing, and, while he had previously been vaccinated as a child and prior to graduate school, he had repented of those decisions.

46.    Beer further stated in his letter that he would be more than happy to wear a mask, test weekly or even more frequently, and work remotely. *Id*.

47.    Like Dr. Kefalas and Lott, Beer received an inquisitorial questionnaire from BMS asking him to answer certain questions, which asked, among other things, whether he ever smoked, consumed alcohol, or took recreational drugs since he adopted his religious beliefs, whether he had any tattoos, and, if so, how he could reconcile any of

these questions with his religious beliefs. **Exhibit J.** Beer answered these questions to the best of his ability.

48.     On November 16, 2021 and November 17, 2021, BMS provided Beer with two letters signed by Cathy Carmichael, its Executive Director of Human Resources, denying his request for a religious accommodation. **Exhibits K & L.**

49.     Like Lott and unlike Dr. Kefalas, BMS did not say anything about the sincerity of Beer's beliefs. Instead, it simply concluded that he was not eligible for an accommodation based on his religious beliefs. **Exhibits K & L.**

50.     BMS further stated that granting Beer's requested accommodation to work remotely would pose an unreasonable hardship. *Id*. It, however, completely ignored that BMS provided him equipment to work from home throughout the COVID-19 pandemic, gave him a performance based raise in September 2021 because of his outstanding performance, and that he received multiple awards from the company for outstanding performance during the pandemic while working from home.

51.     In the November 16, 2021 letter, BMS informed Beer that he would be terminated for cause by December 6, 2021 if he did not receive the COVID-19 vaccination by November 29, 2021. **Exhibit K.** In the November 17, 2021 letter, BMS informed Beer that he would be terminated for cause by January 31, 2021 if he did not receive the COVID-19 vaccination by November 29, 2021. It has not clarified which deadline controls. **Exhibit L**.

52.     Termination would pose an extraordinary hardship on Beer. His current salary is approximately $146,000. Beer and his wife had hoped to start a family in the very near future in reliance on his income, but they cannot do so now because of his

imminent termination. Beer also incurs approximately $6,000 in monthly debt between his mortgage and other living expenses.

53.     Even assuming Beer can reduce his expenses by half each month, he still will face the loss of his home and the loss of assets that he has worked his entire life to acquire if BMS terminates him on December 6, 2021. Additionally, he will be forced to reimburse BMS approximately $20,000 of tuition assistance since he will not have met his time commitment to be employed by BMS. This will be devastating to Beer, and he will also face a significant struggle to support his wife and provide for himself.

54.     The nature of the COVID-19 pandemic has made it nearly impossible for unvaccinated individuals – even those with Beer's education, experience, and skill – to obtain employment.

55.     BMS's termination of Beer for cause will bar him from obtaining unemployment benefits, further depriving him of the ability to start a family and preserve what he has worked so hard to build.

56.     Beer has filed a complaint with the United States Equal Opportunity Employment Commission and awaits a right to sue letter.

### *Kamila Dubisz*

57.     Kamila Dubisz submitted her request for a religious accommodation to BMS on September 13, 2021.

58.     She asked for an exemption from BMS's policy requiring COVID-19 vaccination of all employees for as long as BMS required COVID-19 vaccinations of employees. She also explained that she believes that her body is the temple of the Holy Spirit and that COVID-19 vaccines would render her body unclean. **Exhibit M**.

59.     Like Dr. Kefalas, Lott, and Beer, Dubisz received an inquisitorial questionnaire from BMS Senior Director of Global Employee & Workforce Relations Sangita Land on October 7, 2021 asking her to answer certain questions, which asked, among other things, if she smoked, consumed alcohol, or took any recreational drugs, whether she had tattoos, and what testing measures she would be willing to comply with. **Exhibit N, pp. 7-8**.

60.     Unsatisfied with Dubisz' initial answers, BMS sent her a second questionnaire asking her to state whether she took other vaccines in the past and why, what other medicines she took, whether she had a medical, dental, or cosmetic procedure since she turned 18, whether her children received vaccinations, and whether she gave medicine to her children. **Exhibit N, pp. 1-6.**

61.     In answer to these questions, Dubisz stated that she had not consumed alcohol, smoked, or taken any recreational drugs since 2016. **Exhibit N.** She admitted that she has tattoos, and she explained that, while they are contrary to her religious beliefs, she got them prior to her 2016 conversion experience and that she would not be getting any more because of her religious beliefs. **Exhibit N**. She also stated that she had received vaccinations before her 2016 conversion experience. *Id*. She explained that she had refused vaccinations after her conversion experience and could not recall her medical procedures. *Id*.

62.     On November 15, 2021 BMS provided Dubisz with a decision letter signed by Vincent Garufi, its Executive Director of Human Resources, denying her request for a religious accommodation. **Exhibit O**.

63.     Like Lott and Beer and unlike Dr. Kefalas, BMS did not say anything about the sincerity of Dubisz's beliefs. Instead, it simply concluded that she was not eligible for an accommodation because of her religious beliefs. *Id*.

64.     It further concluded that there was no accommodation available that would enable Dubisz to continue performing her duties without posing an undue hardship to BMS despite Dubisz having worked remotely from home throughout the entirety of the pandemic and her role being out of the office most of the time any way because she is a field employee.

65.     Instead, BMS informed Dubisz that she had to receive a COVID-19 vaccination and provide proof by November 29, 2021 or face termination on December 6, 2021.

66.     Termination would pose an extraordinary hardship on Dubisz. Her current salary is approximately $109,000. Her husband's salary is $120,000. She supports not only her son through her salary, but also is responsible for supporting all of her disabled mother-in-law's expenses and ensuring that she has the means to live comfortably. She incurs approximately $11,100 in monthly expenses in supporting her family and her mother-in-law.

67.     Even assuming Dubisz can reduce her family expenses by half each month, she still will face foreclosure on her home, an incredible struggle to continue to support her completely disabled mother-in-law, and the loss of assets that she and her husband have worked their entire life to acquire if BMS terminates her on December 6, 2021. She will face a significant struggle to support her family if she is terminated.

68.    The nature of the COVID-19 pandemic has made it nearly impossible for unvaccinated individuals to obtain employment, and Dubisz's situation is particularly affected. Dubisz works in a very unique niche with the cellular therapy industry. As such, she has a very specialized skillset and experience that do not translate to other positions. Finding another position with the cellular therapy industry is impossible because of her unvaccinated status.

69.    Dubisz has filed a complaint with the United States Equal Opportunity Employment Commission and awaits a right to sue letter.

**Count One – Religious Discrimination In Violation Of Title VII**

70.    Paragraphs 1 through 69 are incorporated herein.

71.    Title VII requires employers to provide reasonable accommodations to employees who request exemptions from workplace policies on the basis of sincerely held religious beliefs.

72.     BMS is systematically manufacturing basis for denying requests for religious accommodations by:

      a. Denying the sincerity of employees' religious beliefs simply because they hold and express political beliefs too (Dr. Kefalas and all similarly situated employees);

      b. Singling out clearly articulated religious beliefs, recharacterizing them as secular beliefs, and ignoring other stated religious beliefs that are inconvenient to a denial decision (John Lott and all other similarly situated employees);

   c.  Denying requests for accommodation simply because the request is for a religious accommodation based on religious beliefs that BMS disagrees with or cannot comprehend (all plaintiffs and all other similarly situated employees); and

   d.  Categorically refusing to explore reasonable accommodations for employees despite granting the requested accommodations throughout the COVID-19 pandemic, and giving employees performance bonuses for their exceptional performance while accommodated on the grounds that any accommodation would pose an unreasonable hardship (all plaintiffs and all other similarly situated employees).

73.   Upon information and belief, BMS has granted reasonable accommodations to similarly situated employees who have requested medical accommodations that are identical to those requested by the Plaintiffs and all other similarly situated employees at BMS.

74.   BMS' denial of the Plaintiffs' request for religious accommodations, the stated bases, and its threat to imminently terminate them for cause by December 6, 2021 violates Title VII.

### Declaratory and Injunctive Relief

WHEREFORE, the Plaintiffs seek declaratory and injunctive relief as follows:

   A.  A preliminary injunction enjoining Bristol Myers Squibb Co. from terminating them and all other similarly situated employees until the parties can be fully heard on the merits;

B.  A declaratory judgment finding that Bristol Myers Squibb Co. has violated Title VII.

C.  A permanent injunction enjoining Bristol Myers Squibb Co. from terminating them and all other similarly situated employees in violation of Title VII.

D.  Costs and attorney's fees.

E.  Such other relief as this Court deems fair and equitable.

## <u>JURY DEMAND</u>

The Plaintiffs requests the ultimate trial of facts to be resolved by jury.


THE PLAINTIFFS

<u>/s/ Norman A. Pattis /s/</u>

NORMAN A. PATTIS, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com


<u>/s/ Cameron L. Atkinson /s/</u>

CAMERON L. ATKINSON, ESQ.
           *Pro hac vice pending*
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
catkinson@pattisandsmith.com

## VERIFICATION OF DR. CARRIE KEFALAS

I, Dr. Carrie Kefalas, hereby affirm under oath that I have read the foregoing complaint and that its allegations are true and accurate to the best of my knowledge.


_____
Dr. Carrie Kefalas



Subscribed and sworn to before me, this _29th_ day of _November_____, 2021


_____
Notary Public


2

Commonwealth of Pennsylvania - Notary Seal
REGINALD RYTTER, Notary Public
Bucks County
My Commission Expires May 7, 2022
Commission Number 1283421

### <u>VERIFICATION OF JOHN LOTT</u>

I, John Lott, hereby affirm under oath that I have read the foregoing complaint and that its allegations are true and accurate to the best of my knowledge.


John Lott


Subscribed and sworn to before me, this __28th__ day of __November__, 2021

GAVIN PELLETIER
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50096011
My Commission Expires 1/3/2024


Notary Public

1

## VERIFICATION OF JEREMY BEER

I, JEREMY BEER, hereby affirm under oath that I have read the foregoing complaint and that its allegations are true and accurate to the best of my knowledge.

JEREMY BEER

Subscribed and sworn to before me, this _29th_ day of _November_ , 2021

Notary Public



TELIAH M. WARREN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires July 8, 2024

1

## VERIFICATION OF KAMILA DUBISZ

I, Kamila Dubisz, hereby affirm under oath that I have read the foregoing complaint and that its allegations are true and accurate to the best of my knowledge.

Kamila Dubisz

Subscribed and sworn to before me, this 28th day of NOV_____, 2021

Notary Public

ABDUL NOORRANI
Notary Public, State of New Jersey
Registration No. 50099123
Qualified in Passaic County
Commission Expires February 19, 2024



1