UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN LOTT, JEREMY BEER, KAMILA DUBISZ, | Dkt. No. 1:21-cv-10204 |
| Plaintiffs, | |
| v. | |
| BRISTOL MYERS SQUIBB CO. | |
| Defendant. | OCTOBER 12, 2022 |

## THIRD AMENDED COMPLAINT

"*I never thought your announcements could give you – a mere human being – power to trample the gods' unfailing, unwritten laws. These laws weren't made now/or yesterday. They live for all time.*" – Sophocles, *Antigone*.

1. This is an action for redress against a multi-national corporation that preaches diversity, but manipulates its employees' articulation of their religious beliefs to justify discriminating against them. The Plaintiffs seek compensatory and punitive damages compensatory and punitive damages and attorney's fees.

### *Jurisdiction*

2. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1367, and 2201, and venue is proper under 28 U.S.C. § 1391. The claims arise under Title VII and state contract law.

### *Parties*

3. Plaintiff John Lott is a biotechnologist who was terminated by Bristol Myers Squibb Co. in New Jersey. He holds a Masters of Science in Biotechnology from The John Hopkins University. He used to work as an Associate Director of Strategy and Submissions Lead, Patient Safety, and Epidemiology for Bristol Myers Squibb Co.

1

4.      Plaintiff Jeremy Beer is a data integrity professional who was terminated by Bristol Myers Squibb Co. in New Jersey. He holds a bachelor's degree from Salisbury University and is pursuing a Masters of Business Administration with a concentration in corporate strategy from Rutgers University. He used to work as a Senior Manager for Data Integrity for Bristol Myers Squibb Co.

5.      Plaintiff Kamila Dubisz is a biologist who was terminated by Bristol Myers Squibb Co. in New Jersey. She holds a Bachelor's Degree in Biology/Biological Sciences from Felician College. She used to work as an Account Manager for Bristol Myers Squibb Co. in its Apheresis Operations division.

6.      Defendant Bristol Myers Squibb Co. (hereinafter, "BMS") is a multinational corporation incorporated under the laws of Delaware. It maintains its corporate headquarters in New York City, New York.

### *Factual Allegations*

7.      On September 7, 2021, BMS' CEO and Chairman, Dr. Giovanni Caforio, revised BMS's global letter regarding the ongoing COVID-19 pandemic to announce that BMS would require all of its United States employees to be fully vaccinated against COVID-19 by November 1, 2021. *See* **Exhibit A.**

8.      Shortly thereafter, BMS began to roll out its new requirement and institute processes to encourage employee vaccination. BMS's rollout included the threat of "for cause" termination if employees did not receive COVID-19 vaccinations. BMS made provisions at this time to entertain individual employees' requests for accommodations from its vaccination policy.

***BMS's process for religious accommodations***

9. BMS required employees seeking a religious accommodation to initiate the process by completing a standard religious accommodation request form.

10. The initiating form required employees to answer standard questions such as identifying what policy that they were seeking an exemption from, what their religious beliefs were, how they conflicted with the policy, the duration of the requested accommodation, and what accommodation that they desired. It also required them to state that they sincerely held their religious beliefs, that BMS might need to obtain information to further evaluate their request, and that the information that they were providing was true and accurate.

11. After BMS employees submitted the initiating form, BMS responded with a second emailed questionnaire that varied from 10 to 30 questions depending on the employee. The nature of this questionnaire invariably was to test the sincerity of the employee's religious beliefs, and BMS regularly demanded answers to this questionnaire within 2 to 3 days.

12. Once employees had completed these written responses, BMS issued them decision letters either granting their requests or denying them and giving employees until a certain date to get vaccinated or face termination.

***John Lott***

13. John Lott submitted his request for a religious accommodation to BMS on September 24, 2021.

14. He asked for an exemption from BMS's policy requiring COVID-19 vaccination of all employees for as long as relevant, and he attached a written letter

clearly articulating his religious beliefs. **Exhibit B.** In his letter, Lott stated that he had been raised as a Catholic, but simply described himself as "a follower of Christ my whole life." *Id.* Using Bible verses, he articulated the following three reasons for why receiving a COVID-19 vaccination would violate his religious beliefs:

   a. First, it would alter his DNA and that it would tamper with God's design of human beings.

   b. Second, receiving a vaccine to reduce the severity of a sickness would demonstrate his lack of faith in God's word in violation of his religious beliefs.

   c. Third, he objected to the use of fetal cell lines taken from aborted fetal cells in the design and development of the COVID-19 vaccinations.[1]

15. Lott further stated in his letter that he would be more than happy to explore any other measures to help prevent the spread of coronavirus, "such as wearing a mask, receiving asymptomatic testing when indicated or continuing to work remotely." *Id.*

16. Lott received an inquisitorial questionnaire from BMS Senior Director of Global Employee & Workforce Relations Sangita Land on October 6, 2021 asking him to answer certain questions, which asked, among other things, how he could work for BMS given that it used fetal cell lines for testing or development, what products he has not and will not purchase based on his religious beliefs, and whether he had any other reasons for refusing to taking a COVID-19 vaccine.

---

[1] https://www.michigan.gov/documents/coronavirus/COVID-19_Vaccines_and_Fetal_Cells_031921_720415_7.pdf

17. Additionally, BMS required Lott to attest to whether he had used common products such as Tylenol and Pepto Bismol, which it represented had also been tested on fetal cell lines, and to promise never to use the products based on its representations. **Exhibit C.**

18. Lott responded to the inquisition that he did not use any of the listed products and that he only became aware of the aborted fetal cell line issue three years ago, which caused him to repent from unknowingly taking fetal cells into his body. Lott further stated that he would carefully do his own due diligence as to each medicine listed. *Id.*

19. In response to BMS's confrontational question about how he could work for a company that manufactures drugs that use fetal cell lines in testing or development, Lott responded that it was not his place to override another person's right to decide what their treatment should be, and he pointed out that the work that he performed for BMS prevents abortion. *Id.*

20. Lott further indicated that he had no objection to wearing a mask apart from simply requesting leave to step outside for a breath of fresh air or to change his mask if necessary, clearly signaling that he had no objection to BMS choosing to accommodate him by requiring him to wear a mask in the workplace. *Id.*

21. As to BMS's question regarding daily COVID-19 testing, Lott stated that he did not have an objection to being tested every day, but voiced his concern that he had been following scientific literature regarding toxins on testing swabs. *Id.* That said, he did not object to taking a COVID-19 test every day. *Id.*

22. BMS subsequently provided Lott with an attestation form representing that common medications such as Tylenol, Ibuprofen, Benadryl, and Pepto Bismol had been developed using aborted fetal cell lines. **Exhibit D.** It demanded that he foreswear using any of those medications. *Id.* Lott responded as any true scientist would by refusing to blindly believe BMS's representations, stating that he would do his own due diligence, and would forego the products if BMS's representations were true. *Id.*

23. On November 16, 2021, BMS provided Lott a decision letter signed by Caitland Freeland, its Executive Director of Human Resources, denying his request for a religious accommodation. **Exhibit E.** That letter intentionally ignored two of Lott's stated religious beliefs and focused entirely on his belief that a COVID-19 vaccination would alter his DNA and that would violate his faith.

24. BMS did not say anything about the sincerity of Lott's beliefs. Instead, it simply concluded that he was not eligible for an accommodation based on his religious beliefs. *Id.*

25. It further concluded that there was no accommodation available that would enable Lott to continue performing his duties without posing an undue hardship to BMS despite Lott having worked remotely from home throughout the entirety of the pandemic. In doing so, BMS ignored that Lott received at least a half dozen "bravo" awards while working from home and a raise due to his outstanding performance.

26. Instead, BMS informed Lott that he had to receive a COVID-19 vaccination and provide proof by November 29, 2021 or face termination on December 6, 2021.

27. BMS made no effort to accommodate Lott even though it had multiple options at its disposal that would not have disrupted its business: e.g., permitting him to continue to work remotely; requiring him to wear a mask in the workplace and test daily.

28. Lott held firm to his faith, and he was terminated on December 6, 2021 by BMS.

29. Termination imposed an extraordinary hardship on Lott. He lost approximately $178,000 in income, which he used to support his mother and stepfather with their living costs. He had hoped to start a family with his girlfriend in the very near future in reliance on his income, and his termination delayed that important step in his life.

30. Lott filed a complaint with the United States Equal Opportunity Employment Commission and received a right to sue letter on March 21, 2022. **Exhibit M**.

### *Jeremy Beer*

31. Jeremy Beer submitted his request for a religious accommodation to BMS on September 27, 2021.

32. He asked for a permanent exemption from BMS's policy requiring COVID-19 vaccination of all employees, and he attached a written letter clearly articulating his religious beliefs with citations to applicable Bible passages. **Exhibit F.** In his letter, Beer did not associate himself with a religious denomination and described his spiritual journey from his family's heritage to his current beliefs. *Id.* Using Bible verses, he explained that his body "is the temple of God and subjecting it to a vaccination or any other impurity would criticize my lord and question his divine omnipotence." *Id.* He further explained that his religious beliefs require natural healing, and, while he had previously been vaccinated as a child and prior to graduate school, he had repented of those decisions.

33. Beer further stated in his letter that he would be more than happy to wear a mask, test weekly or even more frequently, and work remotely. *Id.*

34. Like Lott, Beer received an inquisitorial questionnaire from BMS asking him to answer certain questions, which asked, among other things, whether he ever smoked, consumed alcohol, or took recreational drugs since he adopted his religious beliefs, whether he had any tattoos, and, if so, how he could reconcile any of these questions with his religious beliefs. **Exhibit G.** Beer answered these questions to the best of his ability.

35. Beer's answers clearly communicated that he had no objection to wearing any type of mask for his entire workday. *Id.* He also informed BMS that he had no objection to taking a daily COVID-19 test. *Id.*

36. On November 16, 2021 and November 17, 2021, BMS provided Beer with two letters signed by Cathy Carmichael, its Executive Director of Human Resources, denying his request for a religious accommodation. **Exhibits H & I.**

37. Like Lott, BMS did not say anything about the sincerity of Beer's beliefs. Instead, it simply concluded that he was not eligible for an accommodation based on his religious beliefs. **Exhibits H & I.** It offered no explanation as to why his beliefs rendered him ineligible for a religious accommodation.

38. BMS further stated that granting Beer's requested accommodation to work remotely would pose an unreasonable hardship. *Id.* It, however, completely ignored that BMS provided him equipment to work from home throughout the COVID-19 pandemic, gave him a performance based raise in September 2021 because of his outstanding

performance, and that he received multiple awards from the company for outstanding performance during the pandemic while working from home.

39. BMS also ignored that Beer stated that he was willing to wear a mask and receive a daily COVID-19 test before entering the workplace.

40. In the November 16, 2021 letter, BMS informed Beer that he would be terminated for cause by December 6, 2021 if he did not receive the COVID-19 vaccination by November 29, 2021. In the November 17, 2021 letter, BMS informed Beer that he would be terminated for cause by January 31, 2022 if he did not receive the COVID-19 vaccination by November 29, 2021. It subsequently terminated him on January 31, 2022.

41. Termination imposed an extraordinary hardship on Beer. His BMS salary was approximately $146,000. Beer and his wife had hoped to start a family in the very near future in reliance on his income, but they cannot do so now because of his termination.

42. Additionally, Beer has been given to understand that he may be forced to reimburse BMS approximately $20,000 of tuition assistance since he will not have met his time commitment to be employed by BMS.

43. Beer filed a complaint with the United States Equal Opportunity Employment Commission and received a right to sue letter on August 10, 2022. **Exhibit 0.**

### *Kamila Dubisz*

44. Kamila Dubisz submitted her request for a religious accommodation to BMS on September 13, 2021.

45. She asked for an exemption from BMS's policy requiring COVID-19 vaccination of all employees for as long as BMS required COVID-19 vaccinations of employees. She also explained that she believes that her body is the temple of the Holy Spirit and that COVID-19 vaccines would render her body unclean. **Exhibit J**.

46. Like Lott and Beer, Dubisz received an inquisitorial questionnaire from BMS Senior Director of Global Employee & Workforce Relations Sangita Land on October 7, 2021 asking her to answer certain questions, which asked, among other things, if she smoked, consumed alcohol, or took any recreational drugs, whether she had tattoos, and what testing measures she would be willing to comply with. **Exhibit K.**

47. Unsatisfied with Dubisz' initial answers, BMS sent her a second questionnaire asking her to state whether she took other vaccines in the past and why, what other medicines she took, whether she had a medical, dental, or cosmetic procedure since she turned 18, whether her children received vaccinations, and whether she gave medicine to her children. **Exhibit K.**

48. In answer to these questions, Dubisz stated that she had not consumed alcohol, smoked, or taken any recreational drugs since 2016. **Exhibit K.** She admitted that she has tattoos, and she explained that, while they are contrary to her religious beliefs, she got them prior to her 2016 conversion experience and that she would not be getting any more because of her religious beliefs. **Exhibit K**. She also stated that she had received vaccinations before her 2016 conversion experience. *Id.* She explained that she had refused vaccinations after her conversion experience and could not recall her medical procedures. *Id.*

49. Unlike its questions to Lott and Beer, BMS did not ask Dubisz if she had any objections to masking or testing or attempt to have any other conversations with her about possible accommodations even though she specifically asked them what accommodations were available.

50. On November 15, 2021 BMS provided Dubisz with a decision letter signed by Vincent Garufi, its Executive Director of Human Resources, denying her request for a religious accommodation. **Exhibit L**.

51. Like Lott and Beer, BMS did not say anything about the sincerity of Dubisz's beliefs. Instead, it simply concluded that she was not eligible for an accommodation because of her religious beliefs. *Id.*

52. It further concluded that there was no accommodation available that would enable Dubisz to continue performing her duties without posing an undue hardship to BMS despite Dubisz having worked remotely from home throughout the entirety of the pandemic and her role being out of the office most of the time any way because she is a field employee.

53. Instead, BMS informed Dubisz that she had to receive a COVID-19 vaccination and provide proof by November 29, 2021 or face termination on December 6, 2021.

54. Termination imposed an extraordinary hardship on Dubisz. Her BMS salary was approximately $109,000. Her husband's salary is $120,000. She supports not only her son through her salary, but also is responsible for supporting all of her disabled mother-in-law's expenses and ensuring that she has the means to live comfortably. She has faced significant struggles to support her family since her termination.

55. The nature of the COVID-19 pandemic has made it nearly impossible for unvaccinated individuals to obtain employment, and Dubisz's situation is particularly affected. Dubisz worked in a very unique niche with the cellular therapy industry. As such, she has a very specialized skillset and experience that do not translate to other positions. Finding another position with the cellular therapy industry is impossible because of her unvaccinated status.

56. Dubisz has filed a complaint with the United States Equal Opportunity Employment Commission and has received a right to sue letter. **Exhibit N.**

**Count One – Religious Discrimination In Violation Of Title VII**

57. Paragraphs 1 through 56 are incorporated herein.

58. Title VII requires employers to provide reasonable accommodations to employees who request exemptions from workplace policies on the basis of sincerely held religious beliefs.

59. BMS systematically manufactured pretexts for denying the Plaintiffs' requests for religious accommodations by:

   a. Singling out clearly articulated religious beliefs, recharacterizing them as secular beliefs, and ignoring other stated religious beliefs that are inconvenient to a denial decision (John Lott);

   b. Denying requests for accommodation simply because the request is for a religious accommodation based on religious beliefs that BMS disagrees with or cannot comprehend (all plaintiffs); and

   c. Categorically refusing to explore reasonable accommodations for employees despite granting the requested accommodations throughout

>       the COVID-19 pandemic, and giving employees performance bonuses for their exceptional performance while accommodated on the grounds that any accommodation would pose an unreasonable hardship (all plaintiffs).

60. Upon information and belief, BMS has granted reasonable accommodations to similarly situated employees who have requested medical accommodations that are identical to those requested by the Plaintiffs and all other similarly situated employees at BMS.

61. BMS' denial of the Plaintiffs' request for religious accommodations, the stated bases, and its termination of them violates Title VII.

**Declaratory and Injunctive Relief**

WHEREFORE, the Plaintiffs seek declaratory and injunctive relief as follows:

    A. Compensatory damages;

    B. Punitive damages;

    C. Costs and attorney's fees.

    D. Such other relief as this Court deems fair and equitable.

## **JURY DEMAND**

The Plaintiffs requests a trial by jury.


DATED: OCTOBER 12, 2022


THE PLAINTIFFS

/s/ Norman A. Pattis /s/

NORMAN A. PATTIS, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com